# IN THE COURT OF APPEALS OF IOWA

No. 16-0946
Filed June 7, 2017

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**QUINTOREY KEMP,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Black Hawk County, George L. Stigler, Judge.

Quintorey Kemp appeals from the judgment and sentence entered upon his conviction of assault while participating in a felony. **AFFIRMED.**

Mark C. Smith, State Appellate Defender, and Shellie L. Knipfer, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Richard J. Bennett, Assistant Attorney General, for appellee.

Considered by Danilson, C.J., and Vogel and Vaitheswaran, JJ.

**VAITHESWARAN, Judge.**

A jury found Quintorey Kemp guilty of assault while participating in the felony of going armed with intent. *See* Iowa Code §§ 708.3(2), 708.8 (2015).[1] On appeal, Kemp argues his trial attorney was ineffective in failing to object to evidence of ammunition discovered in his bedroom before the assault.

## I. *Background Facts and Proceedings*

Sherman Wise, the father of a sixteen-year-old girl, caught Quintorey Kemp in her bedroom. Wise had previously warned Kemp not to come to his house. The two "tussl[ed]." Kemp ran out of the bedroom, and Wise followed. He was "[m]aybe five or six feet" away from Kemp when he noticed that Kemp "had a gun pointed back as he was running." According to Wise, the gun "was definitely a handgun," and it was directed towards him.

Wise and the teen's mother went to the home of Kemp's parents to discuss the incident. Kemp was in the basement. Wise overheard him tell his mother, "You better tell [Wise] to go before I show him something."

Wise walked out of the Kemp home. He saw Kemp's bike and, in frustration, picked it up and threw it. Momentarily, Wise heard someone behind him, turned, and saw Kemp "shooting at" him. In Wise's words, "fire" was coming "from the muzzle" of what "was definitely a handgun."

---

[1] Iowa Code section 708.8 was recently amended to add the following language: "The intent required for a violation of this section shall not be inferred from the mere carrying or concealment of any dangerous weapon itself, including the carrying of a loaded firearm, whether in a vehicle or on or about a person's body." H.F. 517, 87th Gen. Assemb., Reg. Sess. (Iowa 2017); *see* H. Journal, 87th Gen. Assemb., Reg. Sess. 1009 (2017).

At trial, the defense called Kemp's mother as a witness. She denied seeing her son with a gun before hearing the shots. On cross-examination, the prosecutor asked her whether she "found bullets in [Kemp's] room before." She responded, "There were some found in his drawer." Kemp's attorney did not object to this line of questioning.

The defense also called Kemp's father. He testified he went to bed and did not hear gunshots. On cross-examination, he acknowledged his son had bullets in his drawer a year before the incident. Again, Kemp's attorney did not object to this line of questioning.

The jury was instructed the State would have to prove "the defendant committed an assault on Sherman Wise" and "[a]t the time of the assault, the defendant was participating in the crime of Going Armed with Intent." This crime, in turn, contained several elements, including an element requiring proof that "[t]he defendant was armed with the specific intent to use a firearm against Sherman Wise." "Specific intent" was defined for the jury as "not only being aware of doing an act and doing it voluntarily, but in addition, doing it with a specific purpose in mind."

The jury found Kemp guilty, and Kemp appealed following imposition of sentence.

## II.    Ineffective Assistance of Counsel

To prevail on his ineffective-assistance-of-counsel claim, Kemp must prove counsel (1) breached an essential duty and (2) prejudice resulted. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). While we generally

preserve ineffective assistance claims for postconviction relief, we find the record adequate to decide the issue. *State v. Harris*, 891 N.W.2d 182, 186 (Iowa 2017).

Kemp contends his trial attorney breached an essential duty in failing "to consistently object to questions about bullets being found in [his] bedroom a year prior to the incident." In his view, the breach resulted in prejudice because the bullet evidence portrayed him "as a bad and violent person who was using a firearm over a year earlier, thereby, undermining the defense that he did not intend to use the firearm against Wise." We elect to proceed directly to the prejudice prong. *See State v. Thorndike*, 860 N.W.2d 316, 320 (Iowa 2015) ("If we conclude a claimant has failed to establish either of these elements, we need not address the remaining element.").[2]

"Prejudice is established if 'there is a reasonable probability that, but for . . . counsel's unprofessional errors, the result of the proceeding would have been different.'" *Harris*, 891 N.W.2d at 185-86 (quoting *State v. Reynolds*, 746 N.W.2d 837, 845 (Iowa 2008)); *accord Strickland*, 466 U.S. at 694. On our de novo review, we are persuaded Kemp cannot satisfy this standard.

At trial, the prosecutor asked Wise, "Any doubt as far as who that was firing that shot at you?" Wise responded, "Not at all." He said he saw Kemp "put his arm out," point the gun "directly at" him, and fire "[t]hree or four" shots" at him. He surmised Kemp "was aiming at" him. Although Kemp's mother testified her

---

[2] In *State v. Matlock*, the Iowa Supreme Court rejected the State's use of "other bad acts for purposes of establishing the specific intent required for the crime" of going armed with intent. 715 N.W.2d 1, 6 (Iowa 2006). The court characterized the State's reliance on this evidence as an impermissible "resort to defendant's propensity to commit similar acts." *Id.* We find it unnecessary to decide whether the State's reliance on Kemp's prior possession of bullets raised a similar concern and whether Kemp's attorney breached an essential duty in failing to object to this evidence.

son did not have a gun to the best of her knowledge, a police officer testified that she told him Kemp was the shooter.  In light of this evidence, there is no reasonable probability that a successful objection to the bullet evidence elicited by the State would have changed the outcome.

We affirm Kemp's conviction, judgment, and sentence for assault while participating in a felony.

**AFFIRMED.**